UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF INDIANA
                         FORT WAYNE DIVISION

MARILEE J. RITCHIE,                    )
                                       )
        Plaintiff,                     )
                                       )
        v.                              )    CAUSE NO.: 1:15-CV-299-TLS
                                       )
NANCY A. BERRYHILL,                    )
ACTING COMMISSIONER OF THE             )
SOCIAL SECURITY                        )
ADMINISTRATION,                        )
                                       )
        Defendant.                     )

                              **OPINION AND ORDER**

    The Plaintiff, Marilee J. Ritchie, seeks review of the final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying her application for Social

Security Disability and Supplemental Security Income disability benefits, pursuant to 42 U.S.C.

§§ 405(g), 1383(c)(3). The Plaintiff argues that the Commissioner wrongfully denied her Social

Security Disability benefits and erred by (1) misidentifying her disability and (2) failing to

address the merits of her previous applications that she claims were re-opened at lower levels of

review.


                                   **BACKGROUND**

**A.      Procedural Background**

    On May 24, 2012, the Plaintiff applied for disability insurance benefits, alleging

disability beginning on June 1, 2007. (R. 124–25.) The Social Security Administration (SSA)

denied her claim initially and upon reconsideration. (R. 47–50, 57–59.) On November 4, 2013,

the Plaintiff appeared with counsel and testified at a hearing before an administrative law judge

(ALJ). (R. 502.) A vocational expert also testified. (R. 539–44.) On February 18, 2014, the ALJ denied the Plaintiff's application for disability benefits, finding she was not disabled during any of the period from her alleged onset of disability, June 1, 2007, through the date her insured status expired on September 30, 2009. (R. 20–28.) On August 20, 2015, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review of the ALJ's decision. (R. 6–8.)

Previously, on January 5, 2009, the Plaintiff had filed a claim for disability, alleging an onset date of June 1, 2007. (R. 103–04.) Her claim was denied on March 3, 2009. (32–34.) Her claim was also denied on reconsideration on April 20, 2009. (R. 36–38.) On May 16, 2011, the Plaintiff filed a second claim for disability as well as a claim for supplemental security income benefits. (R. 110–23.) Both of these claims were denied, on June 14, 2011, and July 15, 2011, respectively. (R. 39–46.) The Plaintiff did not request reconsideration of either decision.

On October 19, 2015, the Plaintiff filed this claim [ECF No. 1] in federal court against Carolyn W. Colvin, Acting Commissioner of the Social Security Administration.

**B.     Factual Background**

As of the alleged onset date, June 1, 2007, the Plaintiff was forty-two years old with at least a high school education. (R. 27.) During the prior fifteen years, the Plaintiff had worked as a data entry clerk and as a short order cook. (R. 540.)

The Plaintiff claims to be disabled due to diabetes mellitus and complications stemming from diabetes mellitus, including diabetic neuropathy. Moreover, from August 2009 until November 2009, the Plaintiff was hospitalized and treated for Fournier's gangrene, an "infection afflicting the lower abdomen/pubic area, and the genitalia, and the perineal and left gluteal

region," resulting in "multiple surgical debridements and drainages and wound management for severe infection . . . [and she] was treated with wound vacuum-assisted closure therapy and received multiple operations for debridement . . . ." (R. 21.) The Plaintiff also claims that ongoing complications of the gangrene, including the inability to sit for more than ten minutes at a time, a constant dull ache and occasional sharp pains due to the large surgical scar, and incontinence, have rendered her disabled. (R. 25.)

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff was unable to engage in SGA from her alleged onset date, June 1, 2007, to her date last insured, September 30, 2009. (R. 23.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting her ability to do basic work activities under § 404.1520(c). In this case, the ALJ determined that the Plaintiff had a severe impairment of diabetes mellitus with peripheral neuropathy during the

period of June 1, 2007, her alleged onset date, through September 30, 2009, her date last insured. (R. 24.); 20 C.F.R. §§ 404.1520(c), 416.920(c). The ALJ found that this impairment caused more than minimal limitations in the Plaintiff's ability to perform the basic mental and physical demands of work and had lasted for at least twelve months as required under the statute. (R. 24.) The ALJ found that the Plaintiff's Fournier's gangrene was not a severe impairment because it did not meet the twelve-month requirement. (R. 21.)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of the [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things she can still do physically, despite her limitations—to determine whether she can perform "past relevant work," § 4004.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and that she had the RFC to perform a range of sedentary work as defined in 20 C.F.R. § 404.1567(a), except that she could lift, carry, push and pull up to ten pounds; stand or walk approximately two hours per eight-hour workday; sit approximately six hours per eight-hour workday, with normal breaks; occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and must avoid frequent exposure to unprotected heights. (R. 24.)

4

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled prior to her date last insured. The ALJ found that the Plaintiff's impairments, either singly or in combination, did not meet or medically equal the severity of a listed section. The ALJ then assessed the Plaintiff's RFC by evaluating the objective medical evidence and the Plaintiff's subjective symptoms. The ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. (R. 26.) But, the ALJ found that the Plaintiff's testimony and prior statements regarding the intensity, persistence, and limiting effects of these symptoms were "not entirely credible." (*Id.*) The Plaintiff testified that, among other issues, she has difficulties getting out of bed and often sleeps much of the day, that her feet "are, and have been, painful every day and every night," that steps are difficult, that there is sometimes numbness in the lower part of her legs, that she has had muscle spasms "at the rate of 5 to 7 per week," that "she needed a surface to put her hand on to stand up or to sit down," that she felt unbalanced when standing up, that she could not have picked up her infant granddaughter in 2009, that she had a painful tailbone that contributed to her difficulty sitting and standing, "a constant dull ache with some occasional sharp pains which prevent sitting more than 10 minutes and require standing up to alleviate," and incontinence. (R. 25.) The Plaintiff's adult daughter testified that the Plaintiff spent much of her time in bed—up to twenty out of thirty days—and that the Plaintiff was "no longer capable of the type of activities or work she used to do." (R. 536.) However, the ALJ concluded that the Plaintiff's subjective testimony was not supported by the objective medical evidence, and thus, the ALJ discounted the Plaintiff's subjective symptoms, finding the Plaintiff not credible. (R. 25.)

Turning to the objective medical evidence, the ALJ noted that in 2011, the Plaintiff did not tell her consultative physician about the "dull ache with some occasional sharp pains" caused

5

by her surgical scar. (R. 25–26.) Nor did the Plaintiff mention to her 2009 consultative physician that her feet were painful or that she was having muscle spasms. (R. 26.) This physician "found normal strength in the claimant's muscles, no atrophy or muscle spasm, and only 'light touch losses in the feet.'" (*Id.*) The Plaintiff did mention her leg pain and numbness during the 2011 consultation, but this physician also did not find objective evidence to support the Plaintiff's complaints. (*Id.*) The physician concluded that the Plaintiff was able to "sit indefinitely and could climb stairs, although she was limited to standing or walking for 15 at a time and to lifting no more than 10 pounds." (*Id.*) A physician specializing in ophthalmology who examined the Plaintiff in July 2011 concluded that the Plaintiff was "able to work, particularly in a sedentary job." (*Id.*)

The ALJ gave the opinions of the consultative physicians "great weight" and gave "some weight" to the opinion of the physician specializing in ophthalmology. In determining the Plaintiff's RFC, the ALJ concluded that "taking into account the claimant's long-standing problems with diabetes, her medical difficulties in 2009, and the opinion of both consultative physicians that talking and standing is very limited, it is reasonable to reduce the claimant's exertional level to sedentary." (*Id.*) In so determining, the ALJ gave "only minimal weight" to an earlier State agency opinion that found that the claimant could work at the "medium exertional level" and gave "only partial weight" to a later State agency evaluation that found the claimant could engage in work at the "light exertional level." (*Id.*)

The ALJ concluded that the Plaintiff is capable of performing her past relevant work as a data entry clerk, which is a semi-skilled position per the Dictionary of Occupational Titles 203.582-054. (R. 27.) Alternatively, the ALJ relied on the vocational expert's testimony to find that "considering the claimant's age, education, work experience, and residual functional

6

capacity, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a))." (*Id.*) Thus, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act from her alleged onset date, June 1, 2007, through her date last insured, September 30, 2009. (R. 28.)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 608. The court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it

lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). The ALJ must explain her analysis of the evidence with enough detail and clarity to permit meaningful appellate review. *See Herron v. Shalala*, 19 F.3d 329, 333–34 (7th Cir. 1994). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

The Plaintiff alleges that the ALJ had no power to decide whether to reopen her prior claims because the claims had already been reopened at a lower level of review by the SSA. (Pl. Br. 9–10.) The Plaintiff also alleges that the ALJ did not correctly identify the Plaintiff's impairment and improperly focused on the Fornier's Gangrene, claiming it "poisoned" the ALJ's ensuing analysis because she found the impairment to be non-severe by nature of having a duration of less than twelve months. (*Id.* at 10–12.) The Defendant responds that the ALJ's RFC analysis is supported by substantial evidence and that the ALJ gave the medical opinions due weight. (Df. Br. 3).

8

## A. Reviewing Re-Opened Prior Claims

An ALJ's decision whether or not to re-open a prior claim is not reviewable by the district court. *Alfreds v. Colvin*, 368 F. App'x. 289, 290 (7th Cir. 2015) ("[T]he denial of a request to reopen is not subject to judicial review."); *Bolden ex rel. Bolden v. Bowen*, 868 F.2d 916, 918 (7th Cir. 1989) (decision to reopen not reviewable) (*citing Califano v. Sanders*, 430 U.S. 99 (1977) (reopening is a creation of regulation, not of the Social Security Act)).

The Plaintiff argues that her prior claims were reopened at the lower levels of the agency's review and, because those claims were already reopened, that the question of whether the claims should be reopened was not before the ALJ, nor could the ALJ essentially re-determine the issue. However, courts "have expressly rejected the argument that a reopening of a prior final decision can occur at a lower level of staff agency review and estop the ALJ and in turn the Commissioner from asserting res judicata and refusing to consider a second application." *Cash v. Barnhart*, 327 F.3d 1252, 1257, n.9 (11th Cir. 2003) (citing *Johnson v. Sullivan*, 936 F.2d 974 (7th Cir. 1991); *Morris v. Sullivan*, 897 F.2d 553 (D.C. Cir. 1990)). *See also Tobak v. Apfel*, 195 F.3d 186, 187 (3d Cir. 1999); *Harper v. Sec'y of Health and Human Servs.*, 978 F.2d 260, 264 (6th Cir. 1992). Thus, the Plaintiff's argument that the ALJ had no power to decide whether or not to reopen her prior claims is without merit.

The decision whether or not to reopen a claim is discretionary. Thus, although a claim may be reopened for any reason if the claimant requests it within twelve months of the initial determination, there is no automatic reopening. *See Brothers v. Astrue*, 2011 WL 2446323, at *11 (N.D. Ill. June 13, 2011). However, the Court may determine "whether the Commissioner actually or *de facto* reconsidered or reopened the merits of any substantive matter of the first

9

[disability] application." *Krizan v. Apfel*, 35 F. Supp. 2d 672, 675 (N.D. Ind. 1999); *Brown v. Heckler*, 565 F. Supp. 72, 74 (E.D. Wis. 1983) ("The defendant correctly points out that this court cannot review the secretary's decision not to reopen a prior case" but the record "suggests that [the secretary] did, in fact, treat the matter as though it were reopened."); *Stoxstell v. Bowen*, 1986 WL 8046, at *2 (N.D. Ill. July 17, 1986) ("[W]e have jurisdiction to determine whether the . . . Secretary, in the course of considering the subsequent claim, has actually or constructively reopened the original claim."). "The final decision of the [ALJ] denying such a claim is subject to judicial review to the extent it has been reopened, without regard to the expressed basis for the [ALJ's] denial." *Brown v. Sullivan*, 932 F.2d 1243, 1246 (8th Cir. 1991). Thus, even if the ALJ explicitly declined to reopen a decision, "[a] district court also may review a decision not to reopen if the ALJ nonetheless reconsidered an otherwise final determination on the merits to any extent and at any administrative level." *McLachlan v. Astrue*, 703 F. Supp. 2d 791, 795 (N.D. Ill. 2010) (internal quotations omitted) (citing *Johnson*, 936 F.2d 974). *See also Jelinek v. Heckler*, 764 F.2d 507, 508 (8th Cir. 1985) ("In this case, the ALJ proceeded to reconsider [the claimant's] case on the merits immediately after concluding [the claimant's] earlier application could not be reopened. Review of the Secretary's final decision on [the claimant's] claim is therefore proper.").

### *1. Whether the ALJ Constructively Re-Opened the Plaintiff's Prior Claims*

In the instant case, the Court finds that the ALJ constructively reopened the Plainiff's prior claims, her express statement to the contrary notwithstanding, by considering and weighing previously considered evidence and making a determination regarding a previously adjudicated time period.

The ALJ relied heavily on evidence considered in the previous claims to come to her final determination that the Plaintiff was not disabled during the time period for which she was insured. For example, the ALJ placed "great weight" on the opinion of Dr. Holton, a consultative physician that evaluated the Plaintiff on February 14, 2009. (R. 26.) Dr. Holton's evaluation was considered in both the initial determination and subsequent denial on reconsideration of the Plaintiff's January 2009 application. (R. 35, 38.) Likewise, the ALJ placed "great weight" on the opinion of Dr. Gadiraju, another consultative physician that evaluated the Plaintiff on June 24, 2011, prior to the denial of the Plaintiff's May 2011 applications. (R. 26.) The ALJ placed "minimal weight," "some weight," and "partial weight" on other evaluations of the Plaintiff rendered in March 2009 and July 2011. (*Id.*) These evaluations—all completed and considered prior to the Plaintiff's third application—comprise the bulk of the ALJ's evidence in support of her determination that the Plaintiff was not disabled. In fact, the ALJ relied on only one medical evaluation conducted subsequent to the denial of her May 2011 applications.

Moreover, the ALJ relied on this evidence to determine that the Plaintiff was not disabled throughout the time period between her alleged onset date, June 1, 2007, and her last date insured, September 30, 2009. The ALJ found that the Fournier's Gangrene was non-severe and proceeded to re-analyze the diabetes mellitus impairment. Thus, the ALJ made a determination on the merits for the time period previously adjudicated by the SSA for an impairment previously claimed. *Colt v. Astrue*, 2011 WL 999226, at *7 (W.D. Wash. Mar. 1, 2011) ("To the extent the two applications have the same onset dates, and thus involve assessments of disability over the same periods, the Court concludes the ALJ de facto reopened the issue of [the claimant's] disability over the already adjudicated period."); *cf. Laggner v. Comm'r of Soc. Sec.*, 2016 WL 1237882, at *16 (N.D. Ind. Mar. 30, 2016) (ALJ did not constructively reopen prior

claims because she determined whether the claimant was disabled as of the date of the current application, not as of any date for which the SSA had already determined the claimant was not disabled). Therefore, by making a determination on the merits regarding a previously adjudicated impairment over a previously adjudicated time period, the ALJ constructively reopened the Plaintiff's claims.

## 2. *Whether the ALJ's Decision is Supported by Substantial Evidence*

Because the ALJ constructively reopened the Plaintiff's claims, the Court has subject matter jurisdiction to review the ALJ's determination, which the Court reviews for substantial evidence. However, the Court is unable to engage in a meaningful review of the ALJ's decision.

Under subheading five (Step 4), the ALJ states:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the existence of other symptoms prior to the date last insured, and the intensity, persistence and limiting effects of certain symptoms prior to the date last insured, are not entire credible for the reasons explained in this decision.

(R. 26.)

Because the ALJ has not explained this credibility finding, the Court cannot engage in a meaningful review of the decision. "An ALJ is in the best position to determine the credibility of witnesses, and a credibility determination will be overturned only if it is patently wrong." *Pinder v. Astrue*, 2010 WL 2243248, at *4 (N.D. Ind. June 1, 2010) (*citing Craft v. Astrue*, 539 F.3d at 678). "Reviewing courts therefore should rarely disturb an ALJ's credibility determination, unless that finding is unreasonable or unsupported." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). However, "a failure to adequately explain his or her credibility finding by discussing specific reasons supported by the record is grounds for reversal." *Minnick v. Colvin*, 775 F.3d

929, 937 (7th Cir. 2015) (*citing Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)); *Brindisi v. Barnhart*, 315 F.3d 783, 787–88 (7th Cir. 2003); *Salaiz v. Colvin*, 202 F. Supp. 3d 887, 893 (N.D. Ind. 2016). "The determination of credibility must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft*, 539 F.3d at 678. To evaluate credibility, an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96–7p.

The Social Security regulations set forth seven kinds of evidence the ALJ should consider, enumerated in 20 C.R.F. § 404.1529(c):

> (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Social Security "regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a bases for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005). "The ALJ should not mechanically recite findings on each factor, but must give specific reasons for the weight given to the individual's statements." *Evans v. Astrue*, 2012 WL 951489, at *11 (N.D. Ind. Mar. 20, 2012). "[T]he ALJ's conclusion that [the claimant's] statements were not fully credible for 'the

reasons explained in this decision' is not an analysis." *Dukleska v. Colvin*, 2016 WL 814845, at *7 (N.D. Ind. Mar. 1, 2016).

Here, it appears that the ALJ weighed the credibility of the Plaintiff against *only* the objective medical evidence. The Seventh Circuit, and this District, have squarely rejected this approach. *See, e.g.*, *Villano v. Astrue*, 556, F.3d 558, 562 (7th Cir. 2009) ("[T]he ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it."); *Myles v. Astrue*, 585 F.3d 672, 677 (7th Cir. 2009) (same); *Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir. 2014) (same); *Thomas v. Colvin*, 534 F. App'x 546, 552 (7th Cir. 2013) (same); *Boyd v. Barnhart*, 175 F. App'x 47, 50 (7th Cir. 2006) (reversing and remanding for insufficient credibility determination where the Commissioner "defended the ALJ's decision by relying on the objective medical evidence, the testimony of the vocational expert, and a brief discussion of [the claimant's] daily living activities"); *Salaiz*, 202 F. Supp. 3d at 893–94 ("The ALJ erred when assessing the Plaintiff's credibility because she relied entirely on medical evidence . . . ."); *Vercel v. Colvin*, 2016 WL 1178529, at *4 (N.D. Ind. Mar. 28, 2016) (Although the "ALJ is not required to give full credit to every statement of pain made by the claimant . . . a claimant's statements regarding symptoms or the effect of symptoms on his ability to work 'may not be disregarded solely because they are not substantiated by objective evidence.'") (*quoting* SSR 96-7p at *6).

In fact, "the whole point of the credibility determination is to determine whether the claimant's allegations are credible *despite* the fact that they are not substantiated by the objective medical records." *Stephens v. Colvin*, 2014 WL 1047817, at *9 (N.D. Ind. Mar. 18, 2014) (emphasis in original). The Plaintiff's adult daughter testified on her behalf and "*credibly* stated that her mother is no longer capable of the type of activities or work she used to do." (R. 25.)

14

(emphasis added). However, the ALJ improperly ignored the adult daughter's admittedly credible testimony because it went against the objective medical evidence. *See Thomas*, 534 F. App'x at 551 (The ALJ's argument "that [the claimant's] alleged daily activities 'cannot be objectively verified with any reasonable degree of certainty' [] ignores the fact that [the claimant's] daughter (who forced [the claimant] to move in with her so that she could provide care) confirmed the type and extent of [the claimant's] daily activities."). Though an ALJ need not mention every piece of evidence in the record, an ALJ "simply cannot recite only the evidence that is supportive of her ultimate conclusion without acknowledging and addressing the significant contrary evidence in the record." *Moore*, 743 F.3d at 1124.

Moreover, the ALJ suggests that the Plaintiff's testimony is credible as to *some* symptoms, but the ALJ does not explain specifically to *which* symptoms she refers. Instead, by falling back on the boilerplate language "for the reasons explained in this decision," the ALJ left it to the reader, and hence the Court, to determine which symptoms the ALJ found credible and which she found not credible. "This is not the role of the Court in a substantial evidence determination." *Lopez*, 336 F.3d at 539. "The Seventh Circuit has criticized ALJ's [sic] summarily using this [] language, as it is unclear which statements are not credible and what 'not entirely' means." *Dukleska*, 2016 WL 814845, at *7 (*citing Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010)).

"Although objective medical evidence and daily activities are appropriate factors to consider, the ALJ failed to articulate how these factors supported or contradicted any particular claims made by the Plaintiff." *Pinder*, 2010 WL 2243248, at *5. As the ALJ's language stands, "one must read the opinion from back to front, first identifying the ALJ's residual functional capacity, then looking to the claimant's testimony, sorting out what supports the finding (and

hence was credible) from what doesn't support the finding (and hence wasn't believed)." *Brindisi*, 315 F.3d at 787–88.

Here the ALJ has failed to "articulate at some minimal level his analysis of the evidence" to permit an informed review. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). "On remand, the ALJ will have an opportunity to assess Plaintiff's subjective symptoms under SSR 16-3p." *Pulliam v. Berryhill*, 2017 WL 1055798, at *9 (N.D. Ind. Mar. 21, 2017). The ALJ should specifically state which of the Plaintiff's symptoms she does not find credible and explain the bases on which these determinations rely. *See Dukleska*, 2016 WL 814845, at *7.

**B.      Mischaracterizing the Impairment**

The Court disagrees with the Plaintiff that the ALJ mischaracterized her impairment as the Fournier's gangrene, rather than the diabetes mellitus. The ALJ specifically stated that diabetes was the impairment at issue and proceeded through the remainder of the disability analysis on that front. (R. 24.) With regard to the gangrene, the ALJ found only that the gangrene was not by itself a severe impairment as defined by the Social Security Act. (R. 21.)

However, it is not clear to the Court that the ALJ adequately analyzed the combined effect of the diabetes mellitus and Fournier's gangrene on the Plaintiff's ability to work. "In making a proper RFC determination, the ALJ must consider . . . the combined effect of all of a claimant's impairments, both severe and non-severe." *Keenan v. Colvin*, 2016 WL 4735157, at *8 (N.D. Ind. Sept. 12, 2016); *Plump v. Colvin*, 2014 WL 55523052, at *4 (N.D. Ind. Feb. 10, 2014) ("[T]he regulations explicitly require that the ALJ consider the non-severe impairments in combination with the severe impairments) (*citing Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010) and *Winfield v. Comm'r of Soc. Sec.*, 2013 WL 692408, *3 (N.D. Ind. 2013)). And, "[a]

failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted). "Although the non-severe impairments may not have an effect on the claimant's RFC ultimately, the ALJ [is] required to explain why." *Id.* "The fact that [an impairment] standing alone is not disabling is not grounds for the ALJ to ignore them entirely—it is [its] impact in combination with [the claimant's] other impairments that may be critical to his claim." *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014).

In *Plump v. Colvin*, the court remanded the ALJ's denial of benefits because the ALJ identified the claimant's depression as a "non-severe impairment" but failed to "identify any resulting limitations or explain why [the claimant's] depression did not affect his RFC." 2014 WL 5523052, at *4 (N.D. Ind. Feb. 10, 2014). Similarly, in *Verlee v. Astrue*, the court remanded the ALJ's decision "because the agency failed to provide any explanation or discussion of the Plaintiff's [non-severe impairments] [and] [c]onsequently, the Court ha[d] no place to start its review." 2013 WL 1760810, at *5 (N.D. Ind. Apr. 24, 2013). The *Verlee* court stated that "any analysis of the agency's decision would require the Court to engage in an *ex post* rationalization of the agency's nonexistent discussion." *Id.* On remand, the court instructed the ALJ to "evaluate whether the Plaintiff's [non-severe impairments] affect his ability to work, particularly with respect to his RFC assessment."

The primary evidence regarding the ongoing effects of the Fournier's gangrene arises from Plaintiff's testimony at the hearing and her statements to Dr. Gadiraju in 2011 regarding her symptoms. After discounting the credibility of this evidence with cursory, boilerplate language, the ALJ said nothing about the ongoing effects of the gangrene. Her only reference to the impairment in her conclusion regarding the Plaintiff's exertional level was the statement:

> Overall, taking into account the claimant's long-standing problems with diabetes, her medical difficulties in 2009, and the opinion of both consultative physicians

17

that walking and standing is very limited, it is reasonable to reduce the claimant's exertional level to sedentary.

(R. 26.) Here, the ALJ failed to account for how any lingering effects of the gangrene would affect the Plaintiff's RFC. "The ALJ's cursory analysis does not give [the Court] confidence that [s]he had appropriate reasons for rejecting the limitations [the Plaintiff] alleged." *Villano*, 556 F.3d at 562.

Because the ALJ did not provide any explanation as to how the Plaintiff's non-severe impairment could affect her RFC, the Court is unable to meaningfully review the decision. On remand, the ALJ should consider the effects of the ongoing symptoms resulting from the Fournier's gangrene on the Plaintiff's RFC and provide detailed analysis as to whether or how those symptoms ultimately alter her RFC.

## CONCLUSION

For the reasons stated above, the Court REVERSES and REMANDS this case for further proceedings in accordance with this opinion and order.

SO ORDERED on September 8, 2017.

 s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT